IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

|                                      |   |                    |
|--------------------------------------|---|--------------------|
| **DELORIS LINDSEY,**                 | ) |                    |
|                                      | ) |                    |
|     Plaintiff,   | ) |                    |
|                                      | ) |                    |
| v.                                   | ) |                    |
|                                      | ) | **No. 09-2448-STA** |
| **MEMPHIS, LIGHT, GAS AND WATER;**   | ) |                    |
|                                      | ) |                    |
|     Defendant.   | ) |                    |

_____

**ORDER DENYING IN PART DEFENDANT'S AMENDED MOTION TO DISMISS**
_____

Before the Court is Defendant Memphis Light, Gas, and Water's Amended Motion to Dismiss or in the alternative Judgment on the Pleadings (D.E. # 10) filed on August 31, 2009. Plaintiff Deloris Lindsey responded in opposition to Defendant's Motion (D.E. # 15) on October 30, 2009. For the reasons set forth below, Defendant's Motion is **DENIED** in part.[1]

## BACKGROUND

Plaintiff Deloris Lindsey and her husband, Thomas H. Lindsey purchased a residence located at 1821 West Holmes Road, Memphis, Tennessee 38109 on or about February 10, 1978. Am. Compl. ¶ 7. Defendant Memphis, Light, Gas, and Water provided electrical, gas, and water utility services to the residence. *Id.* Following Thomas H. Lindsey's death in 2003, the MLGW

---

[1] Defendant Memphis Light, Gas and Water filed its First Motion to Dismiss or in the Alternative for Judgment on the Pleadings (D.E. # 3) on July 25, 2009. On August 24, 2009, Plaintiff Deloris Lindsey filed her response in opposition to Defendant's motion and filed an Amended Complaint. In light of Plaintiff's Amended Complaint, Defendant's First Motion to Dismiss is now moot. *See generally*, *B&H Medical, L.L.C. v. ABP Admin., Inc.*, 526 F. 3d 257, 268 (6th Cir. 2008).

1

account, # 00066-1093-1444-223, was placed solely in Plaintiff's name. *Id*.

On or around March 30, 2007, Plaintiff agreed to help her daughter Sonya Soto and son in law Cesar Soto obtain utility services at their residence on 6621 Mistletoe Cove, Memphis, Tennessee. *Id*. at ¶ 8. MLGW placed the 6621 Mistletoe Cove account, # 00066-1093-1355-597, in Plaintiff's name. *Id*. at ¶ 8.[2] Plaintiff continued to reside at 1821 West Holmes Road. *Id*. at ¶ 9.

Beginning in May 2007, the account for utility services at 6621 Mistletoe Cove was delinquent and cut off notices were mailed to that address on May 14, 2007, July 14, 2007, August 14, 2007, and September 12, 2007. *Id*. at ¶ 11. To prevent the termination of 6621 Mistletoe Cove's utility services, Plaintiff provided her daughter and son in law with $ 414.45 in July and $ 700.00 in August to use towards their outstanding bill. *Id*. No further payments were made. *Id*.

On October 11, 2007, Defendant mailed a cut off notice to 6621 Mistletoe Cove requiring payment of $ 414.06 on or before October 19, 2007 to avoid termination of utility service. *Id*. at ¶ 12. On November 10, 2007, December 13, 2007, January 14, 2008, February 12, 2008, March 13, 2008, April 15, 2008, May 14, 2008, June 13, 2008, July 15, 2008, August 13, 2008, September 13, 2008, and October 15, 2008, additional cut off notices were sent to 6621 Mistletoe Cove. *Id*. at ¶ 13.[3] Utility services were disconnected on October 28, 2008. *Id*. at ¶

---

[2] The Plaintiff contends that her daughter and son in law promised to be responsible for paying the MLGW bill for their 6621 Mistletoe Cove residence. Am. Compl. ¶ 9.

[3] According to the Plaintiff, Defendant's records indicate that illegal electrical utility usage was found at the 6621 Mistletoe Cove in December 2007 and February 2008. *Id*. at ¶ 15. Plaintiff, however, contends that she was not aware of this activity. *Id*. at ¶ 16.

14. The outstanding balance on the account was $ 2,682.94. *Id*. at ¶ 13.

Plaintiff's MLGW account for 1821 West Holmes was also delinquent on December 18, 2008. *Id*. at ¶ 17. Plaintiff, however, qualified for Defendant's Elderly/Handicapped Winter Moratorium Program, and therefore was relieved of any threat of utility disconnection from December 1st through February 28th. *Id*. at ¶ 17. On January 21, 2009, Plaintiff received her MLGW bill for 1821 West Holmes. *Id*. at ¶ 18. The outstanding balance from 6621 Mistletoe Cove was transferred to Plaintiff's 1821 West Holmes account. *Id*. Therefore, the total amount owed was $3,935.73. *Id*.

The back of Plaintiff's billing statement contained a paragraph entitled "Disputed Bills." *Id*. at ¶ 19. This paragraph directed Plaintiff to call the Customer Care Center, write to the MLGW Research Department, or email MLGW if she disputed the accuracy of her bill. *Id*. Following these instructions, Plaintiff called the Customer Care Center to dispute the transfer of the outstanding balance from 6621 Mistletoe Cove to her 1821 West Holmes bill. *Id*. at ¶ 20. An MLGW customer service representative allegedly informed Plaintiff that she was required to pay the full bill because her name was on the 6621 Mistletoe Cove account. *Id*.

Being unable to pay the outstanding balance and fearing her utility service would be disconnected, Plaintiff contacted the Memphis Area Legal Services and was ultimately referred to the University of Memphis Legal Clinic. *Id*. at ¶ 21. Clinic professor and attorney Donna Harkness sent a letter, dated February 27, 2009, to MLGW disputing the bill. *Id*.[4]

Attorney Harkness had a 30 day hold placed on Plaintiff's account to permit the

---

[4] On the same day, Plaintiff went to one of MLGW's offices and paid $400.00 toward the undisputed portion of the bill for services at her residence on 1821 West Holmes. *Id*. at ¶ 22.

3

scheduling of a hearing on or before the end of April 2009. *Id*. at ¶ 24. Plaintiff's service was briefly terminated on April 28, 2009 but was reconnected the same day. *Id*.

On June 9, 2009, the Defendant held an informal hearing at which Plaintiff disputed her bill. *Id*. at ¶ 25. At the hearing, Plaintiff was represented by her attorney and witnesses were questioned by a "resolution team" made up of MLGW employees. *Id*.[5] Plaintiff argued that she was not obligated to pay the balance of the 6621 Mistletoe Cove bill because (1) MLGW failed to disconnect the service in a timely fashion, (2) the Mistletoe Cove account was unrelated to her own consumption of utilities, and (3) it was inequitable and against public policy for her to pay the outstanding balance. *Id.* at ¶ 27.

On June 11, 2009, the Plaintiff received a letter from MLGW's resolution team notifying her that they found sufficient evidence to support MLGW's position regarding payment of her bill. *Id*. at ¶ 29.[6] Additionally, the letter encouraged Plaintiff to seek external financial assistance. *Id*. On June 24, 2009, Plaintiff applied for external financial assistance from the Low Income Energy Assistance Program ("LIHEAP") through the Shelby County Community Service Agency ("CSA"). *Id*. at ¶ 30. Plaintiff received $525.00 in assistance. *Id*. This amount was applied towards her outstanding utility bill, which included the $2,682.00 balance transferred from 6621 Mistletoe Cove. *Id*. Plaintiff asserts MLGW's application of LIHEAP funds to a closed, past due account was illegal. *Id*.

---

[5] Plaintiff notes that she was not entitled to conduct direct or cross examination of any of the witnesses. *Id*. at ¶ 25. Additionally, all of the witnesses were entitled to hear each others testimony. *Id*.

[6] Plaintiff contends that the letter did not address any of the arguments she made at the informal hearing. *Id*. at ¶ 29. Thus, making it impossible to determine whether she was given the "benefit of the doubt" as required by MLGW policy. *Id*.

Plaintiff's Amended Complaint alleges Defendant's actions violated 42 U.S.C. § 1983 and her Fourteenth Amendment rights to procedural due process and equal protection. Plaintiff additionally asserts various state law claims.[7] Plaintiff seeks both declaratory and injunctive relief.

In the instant Motion before the Court, the Defendant asserts that Plaintiff's Complaint fails to state a claim upon which relief can be granted. More specifically, the Defendant contends that Plaintiff inaccurately relies on 42 U.S.C. § 1983 as a basis for protecting her substantive rights. The Defendant also asserts that Plaintiff fails to make out her prima facie case regarding procedural due process and equal protection. Additionally, the Defendant asks this Court to dismiss Plaintiff's pendant state law claims.

In response, the Plaintiff argues that her Complaint does state a claim upon which relief can be granted. Plaintiff contends that she has established a prima facie case for both her procedural due process and equal protection claims. Additionally, she asserts that her 42 U.S.C. § 1983 claim is proper in conjunction with her procedural due process and equal protection claims. Plaintiff does not address her pendent state law claims.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true

---

[7] Plaintiff asserts various state law claims such as: (1) violation of the Tennessee Consumer Protection Act, (2) breach of contract, (3) violation of the common law duty to serve those residing in a public utility area, (4) negligence, and (5) conversion.

and construe all of the allegations in the light most favorable to the non-moving party.[8] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[9] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[10] "The Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim."[11]

The Supreme Court has more recently stated that the Federal Rules "do not require a heightened fact pleading of specifics, but only enough facts to state a claim that is plausible on its face."[12] The Sixth Circuit has subsequently acknowledged "[s]ignificant uncertainty" as to the intended scope of *Twombly*.[13] Therefore, the Sixth Circuit has articulated the following as the standard of review for 12(b)(6) motions: on a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible

---

[8] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[9] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[10] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 889, 902 (6th Cir. 2003).

[11] *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

[12] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) ("retiring" the "no set of facts" standard first announced in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

[13] *Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 541 (6th Cir.2007); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 337 (6th Cir.2007) ("We have noted some uncertainty concerning the scope of *Bell Atlantic Corp. v. Twombly, ...* in which the Supreme Court 'retired' the 'no set of facts' formulation of the Rule 12(b)(6) standard ....").

on its face."[14] Thus, although the factual allegations in a complaint need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."[15]

Defendant's Motion also seeks relief under Fed. R. Civ. P. 12(c). The standard of review for motions brought under Rule 12(c) is the same as a review pursuant to Fed. R. Civ. P. 12(b)(6).[16]

## ANALYSIS

As an initial matter, Plaintiff's Complaint alleges three federal claims: (1) violation of 42 U.S.C. § 1983, (2) violation of the due process clause of the Fourteenth Amendment, and (3) violation of the equal protection clause of the Fourteenth Amendment. 42 U.S.C. § 1983, however, is "not itself a source of substantive rights, but merely provides a method of vindicating federal rights elsewhere conferred."[17] Therefore, 42 U.S.C. § 1983 is the proper vehicle for Plaintiff to assert both her due process and equal protection claims but can not serve solely as the basis for an independent claim.

A claim under 42 U.S.C. § 1983 has two elements: (1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights

---

[14] *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Twombly,* 127 S.Ct. at 1974 (2007)).

[15] *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (emphasis in original) (citing *Twombly,* 127 S.Ct. at 1964-65).

[16] *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008).

[17] *Graham v. Connor*, 490 U.S. 386, 393 (1989)(quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979))(internal citations omitted).

secured by federal law.[18] Here, the Defendant does not contest that it was acting under color of state law in providing utility services to Plaintiff. In fact, Defendant does not even brief the applicable standard but rather simply asserts that 42 U.S.C. § 1983 does not provide substantive rights to Plaintiff. Defendant MLGW is a division of the city of Memphis which provides utility service. Therefore, for purposes of this Motion, the Court finds that Defendant was acting under color of state law in providing utility service to Plaintiff. The case at bar, therefore, depends on whether Plaintiff has made out the second element of her §1983 claim: violation of her constitutional rights.

### *1. Procedural Due Process*

The Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law.[19] Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest.[20] Additionally, procedural due process is examined in two steps: the first step asks whether there exists a liberty or property interest which has been interfered with by the State, and the second step examines whether the procedures attendant upon that deprivation were constitutionally sufficient.[21]

In *Memphis Light, Gas and Water v. Craft*, a case involving a disputed gas and electric

---

[18] *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008)(citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)).

[19] U.S. CONST. amend. XIV, § 1.

[20] *Warren v. City of Athens*, Ohio, 411 F.3d 697, 708 (6th Cir. 2005).

[21] *Mator v. City of Ecrose*, No. 07-1868, 2008 WL 4935964, at *2 (6th Cir. Nov. 18, 2008)(citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

bill, the United States Supreme Court held that the expectation of utility services rises to the level of a "legitimate claim of entitlement" in the category of property interests protected by the Due Process Clause.[22]  Based on the Supreme Court's holding in *Craft*, this Court finds that Plaintiff undisputedly has a property interest in the expectation of utility services.  Thus, the critical issue in this case is whether Defendant's procedures for terminating Plaintiff's service was "constitutionally sufficient."

In *Matthews v. Eldridge*, the Supreme Court provided a framework of analysis for determining the "specific dictates of due process."[23]  In *Matthews*, the Court held:

> due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action, second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substantive procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[24]

In *Craft*, the Supreme Court applied the *Matthews* balancing approach and found "some administrative procedures for entertaining customer complaints prior to termination is required to afford reasonable assurance against erroneous or arbitrary withholding of essential services."[25]

---

[22] *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978). The Supreme Court reasoned that MLGW like other public utilities in Tennessee was obligated to provide service to all of the city's inhabitants without discrimination and without denial except for good and sufficient cause.  *Id*. Additionally, the Court noted that service could not be terminated except for nonpayment of a just service bill.  *Id*.  Therefore, the Court found that "because petitioners may terminate service only 'for cause' respondents assert a legitimate claim of entitlement within the protection of the Due Process Clause." *Id*.

[23] *See generally*, *Matthew v. Eldridge*, 424 U.S. 319 (1976).

[24] *Id*. at 334-35.

[25] *Craft*, 436 U.S. at 17.  The Supreme Court noted that importance of utility service by emphasizing the impact disconnection has on health and safety.  *Id*.

9

More specifically, the Supreme Court held that (1) a public utility must make available to its customers the opportunity to discuss a billing dispute with a utility employee who has authority to resolve the matter before terminating the utility service for nonpayment,[26] and (2) due process requires the utility to inform the customer not only of the planned termination, but also of the availability and general contours of the internal administrative procedure for resolving the accounting dispute.[27]

Here, the Defendant argues in the instant Motion that Plaintiff has failed to assert that her constitutional right to procedural due process was violated since she concedes in her Complaint she was given a hearing by a three person panel to address her billing dispute. The Defendant contends that Plaintiff's argument inappropriately centers on the adequacy of the hearing. For instance, the Defendant points out that Plaintiff's argument is focused on the fact that no direct examination or cross examination of witnesses was allowed, no witnesses were sworn, and Fed. R. Evid. 615 was not invoked. In response, the Plaintiff contends that all of the hearing's failings did not equate to a "meaningful hearing" as required by the due process clause.

In *Matthews v. Eldridge*, the Supreme Court noted that "due process is flexible and calls for such procedural protections as the particular situation demands.[28]" In *Craft*, the Supreme Court did not specifically enumerate the type of hearing a public utility must afford for billing disputes. In fact, in *Craft* MLGW did not provide the Crafts with a hearing before terminating

---

[26] *Id*. at 16-17.

[27] *Id*. at 13-15.

[28] *Matthews*, 424 U.S. at 334. (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

their utility service.[29]  Therefore, the Court could not determine whether the current hearing comported with due process.[30]  The Court did, however, note that:

> (1) The public utility enjoys a broad discretion in the scheduling and structuring of this "hearing" provided that the customer is afforded adequate time for effective preparation of his complaint prior to termination[31], (2) [the] "some kind of hearing" [should not] prove burdensome, (3) the opportunity for a meeting with a responsible employee empowered to resolve the dispute could be afforded well in advance of the scheduled date of termination, and (4) [the public utility company] would retain the option to terminate service after affording this opportunity and concluding the amount billed was justly due.[32]

Here, Plaintiff, in essence, argues that the hearing Defendant provided in front of the resolution team was "inadequate" because she was not afforded the equivalent of a trial.  For instance, Plaintiff notes that she was "not permitted to conduct either direct examination or for cross-examination of witnesses, witnesses were not sworn, and all witnesses were present and heard each other's testimony."[33]  The Supreme Court, however, noted in *Matthews* that a hearing "closely approximating a judicial trial" is not often necessary in cases such as the one at bar.[34]  In fact, as noted above, the Supreme Court made clear in *Craft* that evidentiary hearings conducted by public utilities should "not prove burdensome" and the public utility "enjoys a broad discretion in the scheduling and structuring of this hearing."  Thus, the Supreme Court intimated

---

[29] *Id.* at 16.

[30] *Id.*

[31] *Craft*, 436 U.S. at 19.

[32] *Id.* at 18-19.

[33] Am. Compl. ¶ 25.

[34] *Matthews*, 424 U.S. at 333.

that the equivalent of a judicial trial is not necessary in cases such as the one at bar.[35]

In fact, in the present case, the Court finds for purposes of this Motion, Defendant's hearing comported with the requirements set forth in *Craft*. Plaintiff was heard by a "resolution team," i.e. employees empowered to resolve the dispute, was represented by counsel, and was allowed to present evidence. Therefore, Plaintiff was provided with "the opportunity to present [her] complaint to a designated employee empowered to review disputed bills and rectify error" as required in *Craft*.[36]

As noted above, the Supreme Court also held in *Craft* that due process requires the utility to inform the customer not only of the planned termination, but also of the availability and general contours of the internal administrative procedure for resolving the accounting dispute. In *Craft*, the Crafts received a final notice contained in their MLGW bill that "simply stated that payment was overdue and that service would be disconnected if payment was not made by a certain date."[37] The final notice made no mention of a procedure for disputing their claim.[38] The Court found that the final notice did not "comport with constitutional requirements . . .[because] it . . . [did] not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified."[39] In *City of West Covina*, the Court clarified its

---

[35] In fact, the Supreme Court in *Craft* cited to *Goss v. Lopez* for the proposition that "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process' hearing in appropriate circumstances. *Craft*, 436 U.S. at 16, n 17 (citing *Goss v. Lopez*, 419 U.S. 565, 581-84 (1975)).

[36] *Craft*, 436 U.S. at 21.

[37] *Id*. at 11.

[38] *Id*.

[39] *Id*. at 14-15.

holding in *Craft* regarding the amount of notice required of available administrative procedures.[40]  The Court opined:

> in requiring notice of the administrative procedures, however, we relied not on any general principle that the government must provide notice of the procedures for protecting one's property interests but on the fact that the administrative procedures at issue were not described in any publicly available document.[41]

Taking the allegations in the Complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiff has adequately pled, for purposes of this Motion, the Defendant did not provide adequate notice of the available hearing process as required in *Craft*.  As noted above, the Supreme Court held in *Craft* that "due process require[s] the utility to inform the customer not only of the planned termination, but also of the *availability and general contours of the internal administrative procedure* for resolving the accounting dispute.[42]"  Here, Defendant provided no such information.  Plaintiff's billing statement provided three methods for disputing a bill: (1) call the Customer Care Center, (2) write the MLGW Research Department, or (3) email Customer Care.  According to the Plaintiff, the availability of a hearing was not mentioned on the back of her billing statement. Following Defendant's instructions, Plaintiff called the Customer Care Center and was informed that she was required to pay the 6621 Mistletoe Cove bill, her daughter's address, since the account was in her name.  Plaintiff was not informed of the "general contours of the administrative procedure," i.e. that she was entitled to a hearing if she

---

[40] *City of West Covina v. Perkins*, 525 U.S. 234, 242 (1999).

[41] *Id*.

[42] *Id.* at 242. (emphasis added)

13

continued to dispute the amount of her bill.[43]  In fact, Plaintiff asserts that it took both a law student and an attorney over a month to determine that a hearing was even available.  Therefore, for purposes of this Motion, the notice Plaintiff received was inadequate.  As such, Plaintiff has sufficiently pled for purposes of this Motion a violation of her right to procedural due process pursuant to the Fourteenth Amendment.  Therefore, Defendant's Amended Motion as to Plaintiff's due process claim is **DENIED**.

### *2.  Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws."[44]  It is essentially a directive that all persons similarly situated should be treated alike.[45]  To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.[46]

When a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called "class of one" theory and

---

[43] This Court notes that in *Craft*, the Supreme Court noted in dicta that a procedure in which MLGW provided credit counselors to resolve bill disputes and then management personnel if the customer was not satisfied with the credit counselor's position might be adequate notice.  *Craft*, 436 U.S. at 15, n. 16.  While in the present case Plaintiff's bill provided her with a contact number to a customer care representative, there is no indication that she was provided with information concerning what to do if she disagreed with the customer care representative's conclusion.

[44] U.S. CONST. amend. XIV, § 1.

[45] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 435, 439 (1985).

[46] *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Michigan*, 470 F.3d 286, 298 (6th Cir. 2006).

must prove that the government's actions lacked any rational basis.[47]  Under rational basis scrutiny, government action amounts to a constitutional violation only if it "is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational."[48]  A "plaintiff may demonstrate that the government action lacks a rational basis . . . either by negating every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will."[49]

Under rational basis review, the defendant has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data.[50]  The burden falls squarely to the plaintiff, who must overcome the presumption of rationality by alleging that the defendant acted in a manner clearly contrary to law.[51]

In the present case, the Defendant asserts that Plaintiff has failed to state a claim for relief under the Equal Protection Clause.  More specifically, the Defendant argues that the Plaintiff has failed to plead that she is a member of a suspect class or that Defendant's actions do not have any rational basis.

In contrast, the Plaintiff asserts that the Tennessee Regulatory Authority ("TRA), the

---

[47] *Id.*

[48] *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)).

[49] *Id.*

[50] *Id.*

[51] *Id.*

15

body that regulates public utility companies in Tennessee, has promulgated guidelines for disconnecting utility service, including for failure to pay.  MLGW, as a municipal utility, is exempt from TRA guidelines.  As a result of this exemption, the Plaintiff contends that "utility customers in Memphis and Shelby County are treated differently than utility customers in the rest of the state."  Plaintiff further contends that "MLGW's failure to adhere to the statewide standards set by the TRA regulations constitutes a violation of the Equal Protection clause . . ."

The Plaintiff does not appear to assert (1) that she has a fundamental right to utility service or (2) that she is a member of a suspect class.[52]  Therefore, for Plaintiff to state a claim for relief under the Equal Protection Clause she must prove that Defendant lacked a rational basis for its actions.  Plaintiff has not done so.

As noted above, to establish that Defendant lacked a rational basis, Plaintiff must negate every conceivable basis for Defendant's actions or show that Defendant's actions were motivated by animus.[53]  In her Complaint, Plaintiff does not allege that Defendant's actions were motivated by animus or ill will. Thus, the Court's inquiry is whether Plaintiff has pled that there is no conceivable basis for the Defendant's actions.

As an initial matter, the Court notes that the basis of Plaintiff's equal protection claim is not entirely clear.  Plaintiff contends that the TRA guidelines comply with due process.  Plaintiff

---

[52] The Court notes that in *Golden v. City of Columbus*, the Sixth Circuit noted that "there is no fundamental right to water service."  404 F.3d 950, 960 (6th Cir. 2005).  As a result, the Sixth Circuit applied rational basis scrutiny to an equal protection claim.  The case at bar does not concern water service solely, but rather electrical, gas, and water service.  Despite this factual distinction, based on the Court's analysis in *Golden*, the Court notes that Plaintiff does not possess a fundamental right to utility service.

[53] *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298.

16

reasons that since MLGW is exempt from such guidelines, "customers in Memphis and Shelby County are treated differently" and as such, "customers of the MLGW should receive at least the minimal level of due process afforded by the TRA."[54] Thus, Plaintiff seems to contend that her due process arguments form the basis of an equal protection claim. The Court is not entirely clear that such a merger is appropriate. However, even if it is, the Court finds that the Plaintiff will never be able to prove that the Defendant lacked a rational basis for its actions.

In her brief in opposition to the instant Motion, Plaintiff asserts that "Defendant has failed to adopt comparable rules and [TRA] regulations for administrative hearing to dispute billing of termination services."[55] Plaintiff, however, concedes that Defendant is exempt from such TRA regulation. Therefore, the Court fails to see how Defendant's non-compliance with regulations it is exempt from can form the basis of an equal protection claim. Despite the Court's confusion, Defendant's actions have a clear rational basis.

Defendant undisputedly provided Plaintiff with a hearing to dispute her bill. The Court previously found this hearing comported with the due process requirements set forth in *Craft*. As such, Defendant's actions surrounding the hearing had a rational basis, Defendant was complying with the due process requirements set forth in *Craft*. Therefore, Defendant's Amended Motion as to Plaintiff's equal protection claim is **GRANTED**.

### 3. State Law Claims

In the instant Motion, the Defendant argues that Plaintiff has failed to state a claim for relief under federal law, and thus the Court should decline to exercise jurisdiction over Plaintiff's

---

[54] Am. Compl. ¶ 47.

[55] Pl.'s Resp. to Def.'s Mot. to Dismiss, 6.

state law claims.  Defendant has not briefed Plaintiff's state law claims nor has Defendant asserted that Plaintiff's Complaint fails to state a claim for relief under state law.  Having found that Plaintiff has sufficiently pled a violation of her right to procedural due process pursuant to the Fourteenth Amendment, the Court will not decline to exercise jurisdiction over Plaintiff's state law claims at this stage.

## CONCLUSIONS

For the reasons set forth above, Defendant's Amended Motion as to Plaintiff's due process claim is **DENIED** and Defendant's Amended Motion as to Plaintiff's equal protection claim is **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(c).  The Court will reserve any ruling on Plaintiff's state law claims.  As an additional matter, Defendant's Motion to Dismiss (D.E. # 3) is **DENIED** as moot.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:   February 24th, 2010.